**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMIN MITCHELL,
Petitioner,

vs.

TIM BRUNSMAN, WARDEN,
Respondent.

Civil Action No. 1:09-cv-632

Spiegel, J.
Wehrman, M.J.

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this case through counsel seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The case is now before the Court upon the petition (Doc. 1), respondent's return of writ and exhibits thereto (Doc. 7), petitioner's traverse to the return of writ (Doc. 8), and respondent's reply brief. (Doc. 11).

## I. FACTUAL[1] AND PROCEDURAL HISTORY

At the time of his offenses in 2005, petitioner Jamin Mitchell was an eighteen-year-old high school graduate from Texas with no criminal background. (Doc. 7, Exh. 9, Apx. pp. 54, 68). In October 2005, petitioner and an acquaintance (who later became his co-defendant) drove from Texas to Cincinnati. *Id*. Petitioner did not tell his friends or family he was leaving, and after a week his mother filed a missing persons report. *Id*. Shortly after arriving in Cincinnati, petitioner was the victim of a robbery. *Id*. Left with no money, no cell phone to contact friends or family, and no means of support, petitioner and his co-defendant robbed a number of elderly individuals at knife point. (Id; Doc. 7, Exh. 7, Apx. pp. 44-45).

The victims included an eighty-one year old woman who was robbed at knifepoint by

[1]The state appellate court did not require or set forth a factual background of the crimes involved in this case given the procedural posture of the case. Nevertheless, both parties have set forth in their briefs facts relating to the incidents giving rise to petitioner's criminal convictions, which the Court repeats in relevant part here.

petitioner and his co-defendant after they followed her home from a store. (Tr. Vol. I, p. 9-10). Later that same day, petitioner and his co-defendant followed a sixty-eight year old woman home from the store, held a knife to her throat, and then took her purse. (*Id*. at 12, 16).

Several days later, petitioner and his co-defendant followed a sixty-eight year old man home from the store. As he was preparing to enter his home, he was held up at knifepoint and knocked down the front stairs as his wallet was taken. (*Id*. at 14-16).

Next, petitioner and his co-defendant followed a seventy-eight year old man from the dentist's office to the retirement community where he lived. (*Id*. at 17-20, 24). After the man entered his home, petitioner and his co-defendant knocked on the front door and forced their way in once the door was opened. The man was knocked to the floor and one of the intruders sat on his back, shoving his head to the floor. The man was stabbed in the arm. He identified petitioner as the person who stabbed him. (*Id.* at 19). The man's seventy-six year old wife was home during the invasion. After she was thrown to the floor with a blanket over her head, she activated an emergency device to summon help. Petitioner and his co-defendant then fled. (*Id*. at 22, 24).

In November 2005, petitioner was charged in a twenty-count indictment with six counts of aggravated robbery, five counts of robbery, three counts of misuse of a credit card, one count of forgery, two counts of felonious assault, and three counts of aggravated burglary. (Doc. 7, Exh. 1). On January 30, 2006, petitioner withdrew his not guilty plea and, pursuant to a plea agreement, entered a plea of guilty to five counts of aggravated robbery and one count of aggravated burglary. (Doc. 7, Exh. 2). The remaining fourteen counts of the indictment were dismissed. (Doc. 7, Exh. 3).

On May 24, 2006, petitioner was sentenced to consecutive ten-year terms of imprisonment

on each of the six counts to which he pled guilty for a total term of incarceration of 60 years.

Petitioner, through counsel, filed a timely notice of appeal challenging the imposition of non-minimum, maximum and consecutive sentences. (Doc. 7, Exhs. 5, 6). The State filed a brief in opposition. (Doc. 7, Exh. 7).

In the meantime, and prior to a decision by the Ohio Court of Appeals on direct appeal, petitioner filed a motion for post-conviction relief asserting his conviction was invalid due to the ineffective assistance of trial counsel. (Doc. 7, Exh. 9). Petitioner argued that trial counsel failed to confer with him about his available defenses and incorrectly advised him he would receive the minimum sentence of three years because he was a first-time offender and no gun was involved. *Id.* Petitioner also argued that counsel failed to inform him of the consequences of a change in the sentencing laws which occurred after he entered his guilty plea and which permitted the trial judge to sentence petitioner to the maximum sentence on each count. *Id.* The State filed a motion to dismiss the petition as untimely. (Doc. 7, Exh. 10). The trial court dismissed the petition for post-conviction relief as untimely. (Doc. 7, Exh. 11).

Petitioner then moved to vacate the dismissal, asserting the petition was filed within the statutorily mandated deadline. (Doc. 7, Exh. 12). The State filed a motion to dismiss, which the trial court granted. (Doc. 7, Exhs. 13, 14).

Petitioner filed a notice of appeal and a brief challenging the trial court's dismissal of his post-conviction petition as untimely. (Doc. 7, Exhs. 15, 16). The State filed an opposition brief. (Doc. 7, Exh. 17).

The Ohio Court of Appeals consolidated petitioner's appeals and on January 30, 2008, overruled petitioner's assignments of error on direct appeal and affirmed the sentence imposed by

the trial court. (Doc. 7, Exh. 8). The state appellate court also affirmed the judgment of the trial court on petitioner's post-conviction petition. *Id.*

Petitioner, through counsel, timely appealed to the Supreme Court of Ohio. (Doc. 7, Exh. 18). In his memorandum in support of jurisdiction, petitioner challenged the constitutionality of his sentence and the Ohio Court of Appeals' decision affirming the dismissal of his post-conviction petition. (Doc. 7, Exh. 19). On March 14, 2007, the Supreme Court of Ohio declined jurisdiction to hear petitioner's case and dismissed the appeal as not involving any substantial constitutional question. (Doc. 7, Exh. 21).

On August 28, 2009, petitioner commenced the instant federal habeas corpus action. (Doc. 1). Petitioner asserts three grounds for relief:

> **GROUND ONE:** Ineffective Assistance of Counsel.
>
> **Supporting Facts:** Mitchell's trial counsel failed to explain to Mitchell the change in the law that had occurred between the date of Mitchell's plea agreement and the date of his sentencing, which had occurred as a result of the Ohio Supreme Court's Foster decision. When Mitchell initially pleaded guilty, he relied on his trial counsel's assurances that, based on the law as it stood at that time, he would receive the minimum sentences on each count and that the sentences would be run concurrently, and that he would therefore receive a sentence of three years. However, in the interim period between Mitchell's plea and his sentencing date, the Ohio Supreme Court issued its Foster decision that allowed [a] sentencing court to impose any sentence within the statutorily prescribed range. Mitchell's trial counsel did not inform Mitchell of this development, nor did he discuss the probability that Mitchell now faced a significantly longer sentence, nor did he discuss with Mitchell the possibility of moving to withdraw his guilty plea based on this new law. This failure to communicate with his client was unreasonable and prejudiced Mitchell in that he ultimately received a sentence of 60 years. Mitchell's plea, as well as the judgment and sentence that resulted therefrom, were all based [on] his trial counsel's ineffectiveness in not knowing and/or not advising his client of the development in the law, and not advising Mitchell of his options as a result.
>
> **GROUND TWO:** Violation of Ex Post Facto Clause of Constitution
>
> **Supporting Facts:** When Mitchell originally committed the offenses at issue and

when he pleaded guilty, the law at that time provided that under the facts of this case, he would be subject to minimum, concurrent sentences. However, by the time he was sentenced, the law had been changed to allow for significantly longer sentences. This increased penalty after the time of the offense violated the Ex Post Facto Clause of the United States Constitution and Mitchell's due process rights thereunder.

**GROUND THREE:** Due Process and Sixth Amendment

**Supporting Facts:** The sentencing court[] sentenced Mitchell to a term of imprisonment of 60 years despite the fact that this sentence exceeded the maximum penalty available at the time of Mitchell's plea because a jury never found the facts necessary to impose this penalty, and because Mitchell never admitted the facts necessary to impose this penalty. The sentence imposed was in excess of the maximum penalty available, thus violating Mitchell's Due Process and Sixth Amendment rights.

(Doc. 1, Petition).

## II. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This Court is bound by the state court adjudications unless those decisions are contrary to or an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104- 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A legal principle is "clearly established" for purposes of habeas corpus review "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes*, 130 S. Ct. 1171, 1173 (2010). "[A] federal habeas court reviewing the state-court judgment must apply the law that controlled "at the time his state-court conviction became final." *Miller v. Stovall*, 608 F.3d 913, 919 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 390 (2000)).

The phrases "contrary to" and "unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

If a state court does not articulate the reasoning behind its decision or fails to adjudicate the constitutional issues, the AEDPA deferential standard of review set forth in section 2254(d) is inapplicable. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Towns v. Smith*, 395 F.3d 251, 257 (6th Cir. 2005); *see also Miller v. Stovall*, 608 F.3d at 919 ("When the state court does not address the merits of a claim, AEDPA deference does not apply and a federal court reviews the petitioner's legal claim de novo."); *Clinkscale v. Carter*, 375 F.3d 430, 436 (6th Cir. 2004) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) ("Where as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.")). Under these circumstances, the constitutional claim is reviewed *de novo* and the Court considers

"the totality of the evidence-'both that adduced at trial, *and the evidence adduced in the habeas proceeding[s]*.'" *Wiggins*, 539 U.S. at 536 (emphasis in the original) (quoting *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000)). *Accord Clinkscale*, 375 F.3d at 436.

**III. PETITIONER'S EX POST FACTO, DUE PROCESS, AND SIXTH AMENDMENT CLAIMS ARE WITHOUT MERIT AND SHOULD BE DENIED.**

Ground Two of the petition asserts petitioner's sentence violated the Ex Post Facto Clause of the United States Constitution and petitioner's due process rights thereunder because the sentence imposed was significantly longer than statutorily permitted at the time the offenses occurred. Ground Three of the petition asserts that petitioner's sentence violated his Sixth Amendment right to a jury trial and his due process rights because it exceeded the maximum penalty permissible at the time of his plea where the facts necessary to impose the sentence were not admitted by petitioner nor found by a jury. Because these grounds for relief are interrelated, they shall be considered together. For the reasons that follow, the undersigned recommends Grounds Two and Three of the habeas petition be denied.

In *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, *cert. denied*, 549 U.S. 979 (2006), the Supreme Court of Ohio held that several provisions of Ohio's felony sentencing statute were unconstitutional pursuant to the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). In *Blakely*, the Supreme Court determined that an enhanced sentence imposed by a judge under a state's sentencing statute, which was based on facts neither admitted by the defendant nor found by a jury, violated the Sixth Amendment right to trial by jury under the United States Constitution. The Supreme Court in *Blakely* reaffirmed its holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000): "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and

proved beyond a reasonable doubt." *Blakely,* 542 U.S. at 301 (quoting *Apprendi*, 530 U.S. at 490). Importantly, the *Blakely* Court clarified that "the 'statutory maximum' . . . is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Id.* at 303 (emphasis in the original). "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id*. at 303-304 (emphasis in the original).

The reasoning of *Blakely* was extended by the Supreme Court to the United States Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005). The Supreme Court in *Booker* held that the Sixth Amendment as construed in *Blakely* applied to the Federal Sentencing guidelines and thus any fact (other than a prior conviction) that increases a defendant's sentence beyond the statutory maximum must be presented to a jury and proved beyond a reasonable doubt. *See Booker*, 543 U.S. at 244. The *Booker* Court held that the Sentencing Guidelines were unconstitutional insofar as they mandated that a defendant's sentence be increased based on facts not found by the jury beyond a reasonable doubt. *Id.* at 243-44. To remedy the Sixth Amendment violation, the Supreme Court severed two sections of the Sentencing Reform Act, effectively making the Sentencing Guidelines advisory. *See id.* at 244-264 (severing and excising 18 U.S.C. § 3553(b)(1) & § 3742(e)).

On February 27, 2006, the Supreme Court of Ohio in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), held that certain provisions of Ohio's sentencing statute were unconstitutional under *Blakely* because they mandated additional judicial fact-finding before the imposition of (1) more than the minimum term for those who have never served a prison term; (2) the maximum

prison term; (3) consecutive prison terms; and (4) repeat-violent-offender and major-drug-offender penalty enhancements. *See id.* at 19-25, 845 N.E.2d at 490-94. Noting that the "overriding goals of Ohio's sentencing scheme are to protect the public and punish the offender," and that the Ohio legislature "delegated the role of determining the applicability of sentencing factors to judges rather than to juries to meet these overriding goals," the Supreme Court of Ohio determined as in *Booker* that the proper remedy was to sever the *Blakely*-offending portions of the statutes and grant trial courts "full discretion to impose a prison sentence within the statutory range" without having to make findings or give reasons for imposing maximum, consecutive, or more than minimum sentences. *Id.* at 25-30, 845 N.E.2d at 494-98. Following the severance of the unconstitutional portions, the resulting Ohio sentencing statutes eliminated the presumptions in favor of minimum and concurrent sentences and permitted courts to sentence a defendant to any term within a crime's sentencing range or to consecutive sentences without making findings of fact.

When petitioner was indicted in 2005, Ohio's sentencing statute, Ohio Rev. Code § 2929.14(B), required a judicial finding "that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others" to justify the imposition of more than the minimum sentence. Under Ohio Rev. Code § 2929.14(C), the maximum prison term could be imposed upon offenders who, inter alia, "committed the worst forms of the offense" or "pose the greatest likelihood of committing future crimes." The statute also permitted the imposition of consecutive sentences if "necessary to protect the public from future crime or to punish the offender" as long as additional findings enumerated in the statute were met. *See* Ohio Rev. Code § 2929.14(E)(4).

When petitioner was sentenced in May 2006 under the new *Foster* sentencing scheme, the

trial judge had full discretion to impose any prison sentence within the statutory range for any reason or no reason, without having to make findings for imposing more than minimum, maximum, or consecutive sentences on petitioner. *Foster,* 109 Ohio St.3d at 25-30, 845 N.E.2d at 494-98; *see also Minor v. Wilson,* 213 Fed. Appx. 450, 453 n.1 (6th Cir. 2007). The State was under no burden "to prove *anything* before the court could select any sentence within the appropriate sentencing range." *Wentling v. Moore*, No. 3:07CV3089, 2008 WL 2778510, at *8 (N.D. Ohio July 14, 2008) (emphasis in the original).

Petitioner's felony one convictions for aggravated robbery and aggravated burglary subjected him to a sentence between three and ten years on each count. *See* Ohio Rev. Code § 2929.14(A)(1). Petitioner was sentenced to the maximum term of imprisonment of ten years on each count, for a total of sixty-years imprisonment. Thus, the trial judge's sentence on each offense was within the statutory range, did not exceed the maximum sentence permitted by the range, and therefore did not violate *Blakely*.

Petitioner nonetheless argues that the application of the *Foster* sentencing scheme had an impermissible *ex post facto* effect on his sentences. As explained above, pursuant to *Foster*, the sentencing court may impose non-minimum, maximum, and consecutive terms of imprisonment in its discretion without making any findings of fact. 109 Ohio St.3d at 30, 845 N.E.2d 498. Petitioner contends that since the indictment was issued in 2005, prior to the *Foster* decision, he was entitled to be sentenced under the pre-*Foster* sentencing scheme in existence at the time he committed his offenses in 2005 which, under *Blakely*, meant there was a presumption that petitioner, who had not previously served a prison term, would be given minimum, concurrent terms of imprisonment unless a judge made the findings required by statute. (Doc. 7, Exh. 6). Petitioner argues that the

*Foster* severance remedy resulted in the impermissible increase of his sentence from the presumptive minimum, concurrent sentence without the trial court having to make any findings on the record as had been required under Ohio Rev. Code § 2929.14(B), (C), and (E)(4) and constitutes the infliction of a greater punishment than the law allowed for the offenses when they were committed.

Under the Ex Post Facto Clause of the United States Constitution, a state is prohibited from passing a law that (1) "makes an action done before the passing of the law, and which was innocent when done, criminal;" (2) "aggravates a crime, or makes it greater than it was, when committed;" (3) "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed;" and (4) "alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender." *Rogers v. Tennessee,* 532 U.S. 451, 456 (2001) (quoting *Calder v. Bull,* 3 U.S. 386, 390 (1798) (Chase, J.)); *see also* U.S. Constit. Art. I, § 10. Ex Post Facto Clause concerns are not triggered in the case-at-hand because the clause "does not of its own force apply to the Judicial Branch of government." *Hooks v. Sheets,* 603 F.3d 316, 321 (6th Cir. 2010) (internal quotation marks and citation omitted); *see also Rogers,* 532 U.S. at 456, 460 (refusing to extend the strictures of the Ex Post Facto Clause to judicial decisions "through the rubric of due process").

Nevertheless, the Fourteenth Amendment's Due Process Clause does limit *ex post facto* judicial decision-making. *Rogers,* 532 U.S. at 456. Although the Due Process Clause does not incorporate the specific prohibitions of the Ex Post Facto Clause, retroactive judicial decision-making must comport with "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal

penalties to what previously had been innocent conduct." *Id.* at 459 (citing *Bouie v. City of Columbia*, 378 U.S. 347, 351, 352, 354-55 (1964)); *see also Hooks*, 603 F.3d at 321.

Here, petitioner is unable to prevail on any claim that he lacked sufficient notice or "fair warning" because *Blakely*, *Booker*, and *Foster* did not change the elements necessary to convict petitioner of the aggravated robbery and aggravated burglary charges, and petitioner was aware of the potential penalties he faced on such charges both before and after *Foster*. In 2005, when petitioner's crimes were committed, the then-applicable provisions of Ohio's sentencing statute provided sufficient notice to petitioner that the trial court had discretion to impose non-minimum, maximum, and consecutive sentences as long as the court made certain findings consistent with Ohio Rev. Code § 2929.14(B), (C), and (E)(4). In other words, petitioner was on notice that he faced somewhere between three and ten years for the commission of a first degree felony and that those sentences could run consecutively so long as the sentencing judge made the requisite findings. Similarly, post-*Foster,* petitioner knew that the trial court retained the discretion to impose consecutive sentences within the statutory range of three to ten years on each offense. Therefore, both before and after *Foster*, petitioner was on notice and thus had "fair warning" of the potential penalties he faced and of the trial court's discretion to impose those penalties.

Petitioner cannot prevail on any claim that application of the *Foster* remedy on his resentencing violated federal constitutional ex post facto principles. This argument and its various permutations have been thoroughly discussed and universally rejected by the federal and state courts in Ohio. *See Wright v. Lazaroff*, 643 F. Supp.2d 971, 1003-1005 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.) (and cases cited and quoted therein); *Smith v. Brunsman,* 626 F. Supp.2d 786, 793-795 (S.D. Ohio 2009) (Barrett, J.; Black, M.J.); *Kelley v. Brunsman*, 625 F. Supp.2d 586, 606-608

(S.D. Ohio 2009) (Spiegel, J.; Hogan, M.J.).[2] *See also Hooks v. Sheets*, No. 1:07cv520, 2008 WL 4533693, at *3-5, *13-19 (S.D. Ohio Oct. 3, 2008) (Beckwith, J.; Hogan, M.J.) (unpublished) (and cases cited therein), *aff'd*, 603 F.3d 316 (6th Cir. 2010); *State v. Elmore*, 122 Ohio St.3d 472, 473, 912 N.E.2d 582, 584 (2009) (and cases cited therein) (resentencing pursuant to *Foster* for offenses that occurred prior to *Foster* does not violate Sixth Amendment right to jury trial or Ex Post Facto or Due Process Clauses of United States Constitution).

The same reasoning contained in these decisions rejecting *ex post facto* challenges to *Foster* applies to the case-at-hand. *Foster* did not change the elements of the crimes of which petitioner was convicted and petitioner had fair warning that he faced the same penalty ranges in the sentences for those offenses both before *Foster* (when he committed the offenses) and after *Foster*. *Cf. McGhee v. Konteh*, No. 1:07cv1408, 2008 WL 320763, at *11 (N.D. Ohio Feb. 1, 2008) (unpublished). *See also Garrett v. Warden*, No. 3:09-cv-058, 2009 WL 1416047, at *4 (S.D. Ohio

---

[2] *See also Sieng v. Wolfe*, No. 2:08cv44, 2010 WL 2232384, at *15 (S.D. Ohio June 2, 2010) (Watson, J.) (unpublished) (and cases cited therein); *Ashley v. Gansheimer*, No. 1:08cv2556, 2010 WL 1924459, at *3-5 (N.D. Ohio May 12, 2010) (O'Malley, J.) (unpublished) (and cases cited therein); *Hatfield v. Warden, Ross Corr. Inst.*, No. 2:08cv1152, 2010 WL 2196282, at *8 (S.D. Ohio May 3, 2010) (unpublished Report & Recommendation) (and cases cited therein), *adopted*, 2010 WL 2196273 (S.D. Ohio May 28, 2010) (Holschuh, J.) (unpublished); *Rettig v. Jefferys*, 557 F. Supp.2d 830, 841 (N.D. Ohio 2008) (Polster, J.; McHargh, M.J.) (citing Ohio cases "uniformly reject[ing] *ex post facto* challenges to the *Foster* decision"); *Smith v. Welch*, No. 3:08cv2917, 2009 WL 2167863, at *1-3, *13-16 (N.D. Ohio July 17, 2009) (Economus, J.; Vecchiarelli, M.J.) (unpublished); *Schaub v. Brunsman*, No. 1:08cv2522, 2009 WL 2143746 (N.D. Ohio July 16, 2009) (Boyko, J.; Perelman, M.J.) (unpublished); *Mason v. Brunsman*, No. 1:07cv1020, 2009 WL 2169035, at *8-9, *34-37 (S.D. Ohio July 16, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished); *Clagg v. Wolfe*, No. 2:08cv144, 2009 WL 1424427, at *1-6 (S.D. Ohio May 20, 2009) (Sargus, J.) (unpublished); *Pena v. Cooper*, No. 2:08cv195, 2009 WL 1324046, at *1, *16-19 (S.D. Ohio May 12, 2009) (Smith, J.; Abel, M.J.) (unpublished); *Newman v. Wilson*, No. 5:08cv483, 2009 WL 1212262, at *1, *11-12 (N.D. Ohio Apr. 30, 2009) (Oliver, J.; Perelman, M.J.) (unpublished) (and cases cited therein); *Trewartha v. Brunsman*, No. 2:07cv981, 2009 WL 614963, at *1, *10-13 (S.D. Ohio Mar. 5, 2009) (Holschuh, J.; Abel, M.J.) (unpublished); *Haning v. Wolfe*, No. 2:07cv1093, 2009 WL 541156, at *1, *3-5 (S.D. Ohio Feb. 27, 2009) (Watson, J.; Abel, M.J.) (unpublished) (and cases cited therein). *Cf. Turner v. Warden, Noble Corr. Inst.*, No. 1:08cv309, 2009 WL 866841, at *2, *9 (S.D. Ohio Mar. 31, 2009) (Spiegel, S.J.; Black, M.J.) (unpublished) (although the court held that *Foster* did not apply to the petitioner's sentence, it noted that "both the federal courts and Ohio courts have rejected *ex post facto* challenges to the *Foster* decision"); *Collins v. Warden, Chillicothe Corr. Inst.*, No. 3:06cv256, 2008 WL 728390, at *1, *8-9 (S.D. Ohio Mar. 17, 2008) (Rice, J.; Merz, M.J.) (unpublished) (holding that "[w]hile Petitioner's original sentence violated *Blakely*, his new sentence [under the *Booker* remedy adopted in *Foster*] did not," and that "[n]othing in the United States Constitution calls such a sentence into question").

May 19, 2009) (Merz, M.J.) (holding petitioner has no "reliance interest" in pre-*Foster* sentencing law). Thus, petitioner was not deprived of his due process rights when the trial court sentenced him to non-minimum, maximum, and consecutive sentences.

For the foregoing reasons, Grounds Two and Three of the petition are without merit and should be denied.

**IV. PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM IS WITHOUT MERIT AND SHOULD BE DENIED.**

Ground One of the petition asserts a claim of ineffective assistance of trial counsel. Petitioner states he agreed to plead guilty because counsel assured petitioner that he would receive a sentence of three years based on Ohio law as it existed at the time of his plea hearing. After petitioner entered his guilty plea, but before sentencing, the Supreme Court decided *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470 (2006), which permitted a sentencing court to impose any sentence within the statutorily prescribed range. Petitioner asserts that trial counsel failed to inform him of the change in the sentencing law rendered by *Foster*, the probability that petitioner under the post-*Foster* sentencing scheme would face a significantly longer sentence, and the possibility of moving to withdraw his guilty plea. Petitioner asserts that but for counsel's deficient performance, he would not have pled guilty and would have insisted on proceeding to a trial.

Respondent contends Ground One of the petition is procedurally defaulted and waived for purposes of habeas review. In the alternative, respondent contends the ineffective assistance of trial counsel claim is without merit.

For the reasons that follow, this Court determines that Ground One is without merit. The Court, in its discretion, declines to reach the question of whether Ground One is procedurally

defaulted and waived.[3]

**A. Ground One Should be Denied on the Merits**.

Ground One asserts a claim of ineffective assistance of trial counsel. To demonstrate that counsel's performance was constitutionally ineffective, petitioner must show: (1) his counsel made such serious errors that he was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced the defense by undermining the reliability of the result. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The Court may dispose of an

---

[3]Respondent argues that Ground One of the petition is procedurally defaulted because petitioner "failed to comply with Ohio's procedural rule requiring a defendant to submit 'evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness.'"(Doc. 7 at 10, citing *State v. Jackson*, 64 Ohio St.2d 107, 107, 413 N.E.2d 819, 820 (1980)). The Sixth Circuit has held that the failure to attach documentation in support of a state post-conviction ineffective assistance of counsel claim may constitute a procedural default of such claim under Ohio law. *See Lorraine v. Coyle*, 291 F.3d 416, 426-27 (6th Cir.)(citing *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905, 910 (1999), and *State v. Jackson*, 64 Ohio St.3d 107, 413 N.E.2d 819, 823 (1980)), *corrected on other grounds on denial of rehearing*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003). The petitioner in *Lorraine* attached the affidavits of his trial attorneys to his post-conviction petition, but those affidavits did not mention the particular claims petitioner wished to address in the post-conviction petition and in the habeas corpus proceeding. The Sixth Circuit determined that petitioner defaulted those claims "by failing to present the necessary proof in the state postconviction review." *Lorraine*, 291 F.3d at 426. *See also Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004) (citing *Lorraine* for the proposition that "[t]he Sixth Circuit has recognized Ohio courts' dismissal for failure to provide documentation as a sufficient basis for finding a procedural default" but declining to address the "document-default issue.").

In the instant case, in contrast, petitioner's affidavits specifically addressed the precise issues he sought to raise in the post-conviction proceeding and seeks to raise in this habeas corpus proceeding. Unlike *Lorraine*, there was no failure to attach evidentiary documentation in support of the particular ineffective assistance of counsel claims raised in petitioner's post-conviction petition. Nevertheless, the Ohio Court of Appeals determined that "the [trial] court properly denied Mitchell's postconviction petition on the ground that Mitchell had failed to support the petition with evidence setting forth sufficient operative facts demonstrating *substantive grounds for relief*." (Doc. 7 at 10, citing Exhibit 8, and in turn citing Ohio Rev. Code § 2953.21(C); *State v. Pankey*, 68 Ohio St.2d 58 (1981); *Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819) (emphasis added)). Whether there are *substantive grounds for relief* depends on whether the petitioner has submitted "evidentiary documents containing *sufficient operative facts* to demonstrate the lack of competent counsel *and* that the *defense was prejudiced* by counsel's ineffectiveness." *State v. Calhoun*, 86 Ohio St.3d 279, 283, 714 N.E.2d 905, 910 (1999) (quoting *Jackson,* 64 Ohio St.2d at 112, 413 N.E.2d at 823) (emphasis in the original). Where, as here, the evidentiary documentation presented by the petitioner has been reviewed for substantive merit and found to lack such merit, there is a closer question as to whether the ruling denying the petition for post-conviction relief is a "procedural" ruling barring habeas corpus review. Rather, it appears to be a substantive ruling that would not constitute a procedural default foreclosing habeas review. The Court declines to rule on this issue because, for the reasons set forth in this Report and Recommendation, the undersigned determines that Ground One should be denied on the merits of petitioner's ineffective assistance of counsel claim.

ineffective assistance of counsel claim by finding that petitioner made an insufficient showing on either ground. *Id*. at 697.

Under the first prong of the *Strickland* test, petitioner must demonstrate that his counsel's representation fell below an objective standard of reasonableness based on all the circumstances surrounding the case. *Id*. at 688. Under the "prejudice" prong of the *Strickland* test, petitioner must show that a "reasonable probability" exists that, but for his counsel's errors, the result of the criminal proceedings would have been different. *Id*. at 694.

In a case such as this involving a conviction obtained upon the entry of a guilty plea, the second "prejudice" prong of the *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). *See also Thomas v. Foltz*, 818 F.2d 476, 480 (6th Cir.), *cert. denied*, 484 U.S. 870 (1987). To successfully challenge a guilty plea on the ground of ineffective assistance of counsel, petitioner must show that his attorney's performance fell below an objective standard of reasonableness and show a reasonable probability that, but for counsel's errors, petitioner would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59; *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996), *cert. denied*, 519 U.S. 1132 (1997); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "Moreover, to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)).

Ground One of the petition asserts that trial counsel provided ineffective assistance because counsel failed to explain to petitioner the change in the sentencing law that had occurred between

the date of the plea agreement and the date of sentencing. Petitioner states that when he initially pled guilty, he relied on his trial counsel's assurances that, based on the law as it stood at that time, he would receive the minimum sentences on each count and that the sentences would run concurrently resulting in a three-year prison term. Petitioner's affidavit in support of his petition for post-conviction relief states:

> I asked Mr. Bennett what sentence I was looking at receiving. He told me because I was a first offender and no gun was involved, I should receive the minimum sentence of 3 years.
>
> Mr. Bennett filled out the plea form in the case. He told me I should not talk in court and just listen and agree with what was being said. The case would be continued for sentencing. He told me if I followed what he was saying I would get the minimum sentence. I then signed the plea form. I signed the plea form because I was told I would get the minimum sentence. I was told this by my attorney after he told me he was leaving to discuss the case with the judge and prosecutor.
>
> The form did contain sentencing ranges, but I was told those were for people who had criminal backgrounds. That a Presentence report would have to be done to confirm that I had no background before sentencing.

(Doc. 7, Exh. 9, 1/17/07 Jamin Mitchell Aff. ¶¶8-10). Petitioner states that he "was under the impression at sentencing that the judge was required to sentence a first offender to the minimum sentence." (Doc. 7, Exh. 9, 3/13/07 Mitchell Aff. ¶6). Petitioner also submitted the affidavits of his father and brother who stated that petitioner's attorney told them that since petitioner was a first offender, he "would get the minimum" and "could expect to receive 3-5 years of incarceration." (Doc. 7, Exh. 9, 1/3/07 Michael Mitchell Aff. ¶7; 3/1/07 Jason Garrett Aff. ¶5).

After petitioner pled guilty, but before his sentencing hearing, the Ohio Supreme Court issued its *Foster* decision which allowed a sentencing court to impose any sentence within the statutorily prescribed range. For the felony one convictions in petitioner's case, this meant a prison term between three and ten years. Petitioner states that counsel failed to inform him of the change in the sentencing law or to discuss with him the probability that petitioner now faced a significantly

longer sentence. (Doc. 7, Exh. 9, 3/13/07 Mitchell Aff. ¶4). Nor did counsel discuss with petitioner the possibility of moving to withdraw his guilty plea based on this new law. (*Id*. at ¶5). Petitioner asserts that counsel's "promise" that petitioner would receive a minimum sentence if he pled guilty and counsel's subsequent failure to advise petitioner about the sentencing ramifications of *Foster* were objectively unreasonable and prejudiced petitioner in that he ultimately received a sentence of 60 years.

In his traverse brief, in addition to the arguments raised in the petition, petitioner also asserts his trial counsel's performance was deficient because he failed to adequately confer with petitioner prior to trial about any available defenses to the charges he faced and failed to anticipate the change in the law generated by the *Foster* decision.

To the extent petitioner's traverse brief raises a free-standing ineffective assistance of counsel claim based on counsel's alleged failure to investigate and confer with petitioner prior to his guilty plea, the entry of petitioner's plea of guilty waives this claim for purposes of habeas corpus review. Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea. *See United States v. Broce,* 488 U.S. 563, 569 (1989); *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett,* 411 U.S. at 267. A defendant who pleads guilty generally waives any non-jurisdictional claims that arose before his plea. In such a case, the Court's inquiry is limited to whether the plea was knowing, intelligent, and voluntary. *See Broce,* 488 U.S. at 569. Accordingly, petitioner's

claim that defense counsel was ineffective in his pre-trial investigation is foreclosed by his plea and petitioner is not entitled to relief on such a basis.

To the extent petitioner may be claiming that trial counsel's failure to confer with petitioner and explore possible defenses prevented the plea from being knowing and voluntary, *see Tollett*, 411 U.S. at 266-67, petitioner has failed to make such a showing in this case. Petitioner has failed to demonstrate he suffered any prejudice as a result of counsel's alleged failures, *i.e.*, that but for counsel's failures he would have insisted on going to trial and not pled guilty. *Hill*, 474 U.S. at 59. Appraisal of the prejudice prong of *Strickland* necessarily includes a prediction of the likely outcome at trial. *Id.* "In the case of an unexplored affirmative defense or undiscovered evidence, this prediction of the likely outcome at trial is relevant to determine whether or not the potential defense or evidence would have caused counsel to change the recommendation as to the plea." *Dando v. Yukins*, 461 F.3d 791, 798 (6th Cir. 2006) (citing *Hill*, 474 U.S. at 59).

Here, petitioner does not identify the potential factual or legal defenses he possessed that counsel failed to investigate or discover. Nor does he identify the witnesses he thinks counsel should have interviewed or how their anticipated testimony would have affected his decision to plead guilty. Petitioner has not identified any exculpatory evidence petitioner expected counsel to discover or legal defenses counsel failed to uncover. He has shown no nexus between counsel's alleged failure to investigate and confer with petitioner and petitioner's decision to plead guilty. His vague and conclusory assertions of prejudice are insufficient to demonstrate his plea was not knowing or voluntary under the circumstances. *See Guerrero v. Sherry*, No. 07-cv-10644, 2008 WL 1902112, at *7 (E.D. Mich. April 30, 2008).

Petitioner also contends that counsel's failure to anticipate the Ohio Supreme Court's

decision in *Foster*, as well as to advise petitioner of the impact of *Foster* after petitioner pled guilty but before he was sentenced, violated his right to the effective assistance of counsel under the Sixth Amendment. Even assuming counsel's omissions in these regards constitute deficient performance and meet the first prong of the *Strickland* test, petitioner fails to meet the second prong of *Strickland* by showing he was prejudiced by counsel's performance.

Assuming, arguendo, counsel informed petitioner that if he pled guilty he would receive a sentence of three years, any mistake by counsel in the terms of the plea bargain was rectified by the trial court at both the plea hearing and the sentencing hearing.

At the January 30, 2006 plea hearing, the trial court confirmed that petitioner agreed to enter a guilty plea to Counts 1, 3, 7, 10, and 16 for aggravated robbery, and to Count 14 for aggravated burglary in return for the State's dismissal of Counts 2, 4, 5, 6, 8, 9, 11, 12, 13, 15, 17, 18, 19 and 20. The trial court then confirmed that no other promises were made to petitioner, other than the dismissal of the additional 14 charges. The trial judge also informed petitioner that each of the counts to which he was pleading guilty carried prison terms of three to ten years each and, if convicted, petitioner faced a total of 60 years in prison:

> THE COURT: *** Mr. Bennett, this is what your client wants to do; is that correct?
> MR. BENNETT: Yes, Your Honor.
> THE COURT: Any other promise been made to him other than this?
> MR. BENNETT: No, Your Honor.
> THE COURT: Okay. And you're Jamin Mitchell?
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you understand the nature of these charges that you're pleading to?
> THE DEFENDANT: Yes, sir.
> THE COURT: And do you understand the plea agreement?
> THE DEFENDANT: (Nodding affirmatively.)
> THE COURT: Yes?
> THE DEFENDANT: Yes, sir.
> THE COURT: Any other promises been made, *other than the promise to drop these*

> *other charges*?
> THE DEFENDANT: *No, sir*.
> THE COURT: And you make this plea voluntarily and of your own free will?
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you understand that in Counts 1, 3, 7, 10 and 16, Aggravated Robbery, which are aggravated robberies. And then on Count 14, which is aggravated burglary, they are all felonies of the first degree. They *each carry three to 10 years* in prison. They each carry $20,000 maximum possible fines. And if convicted, *you face a total of about 60 years in prison*. Do you understand that?
> THE DEFENDANT: Yes, sir.
> THE COURT: Whatever sentence I give you, you would have to serve that full sentence, do you understand that?
> THE DEFENDANT: Yes, sir.

(Doc. 7, Tr. 5-6) (emphasis added). Petitioner then confirmed that he was 18 years of age and that he could read and write. Petitioner also affirmatively represented that the written plea form, which specified sentencing ranges of three to ten years imprisonment for each of the counts to which he was pleading guilty, was reviewed by him with his attorney, that he understood the form, and that he signed the form:

> THE COURT: I have a written plea form that has your signature, did you sign this form?
> THE DEFENDANT: Yes, sir, I did.
> THE COURT: By signing this form, you're telling me you have gone over this form with Mr. Bennett; he's explained it to you, he's a very good attorney, I know he's very thorough. So he went over it with you and explained it to you. By signing this, you're telling me you fully understand this form; is that right?
> THE DEFENDANT: Yes, sir.
>
> *
> *
> *
>
> THE COURT: Do you understand, Mr. Mitchell, that when you plead guilty, you make a complete admission of your guilt to all these charges and all these facts?
> THE DEFENDANT: Yes, sir.

(Doc. 7, Tr. 8, 28).

At the sentencing hearing, petitioner's attorney argued for a sentence in the six to ten year range, not the three year range petitioner now states his attorney "promised" him:

> MR. BENNETT: On his behalf. Judge, based on what transpired in this case, I would not expect the Court to be lenient. I am not asking for leniency. I'm asking the Court for a just, reasonable sentence. And based on my experience, based on the facts and circumstances and events in this case, based on the fact he entered a plea, based on the number of charges that he entered a plea to and based on these circumstances factually, the multiple victims and so forth, I would ask the Court for a sentence in the range of six to nine years, and I base that on the following.
>
> *
> *
> *
>
> In this case, I think the purpose of incarceration can be accomplished. A six to nine, or a six to ten-year period, I don't think that's an anemic or weak sentence. I think it is a very strong sentence. I think within that period of time he can rehabilitate. *I am not sitting here asking for probation or asking for three or four or five years*. I'm asking for a sentence that I think is just. . . .

(Doc. 11, Tr. 49-50) (emphasis added).

The transcript of the trial court clearly indicates that petitioner was informed that he faced three to ten years imprisonment on *each* count. He was also informed that if convicted, he faced a total of 60 years imprisonment, a term of imprisonment which could only occur if the sentences were to run consecutively, and not concurrently. Petitioner also represented to the trial court that no promises had been made to him in exchange for his guilty plea, other than the dismissal of the fourteen additional charges. Even if this Court assumes petitioner's attorney mistakenly informed petitioner that he would receive a three-year term of imprisonment, the plea colloquy cited above cured any mistaken impression petitioner may have harbored about a "promised" minimum three-year sentence. *See Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999). The Sixth Circuit in *Ramos* held that a trial court's proper plea colloquy remedies any misunderstandings a defendant may have about the consequences of a plea:

> Even under the assumption that Ramos has established deficient performance, he cannot establish that this alleged promise by [his attorney] caused him prejudice. This court has held that when a defendant denies knowledge of a plea agreement in reliance on his counsel's mistaken advice, this does not amount to prejudice when

> the court specifically informed him that his counsel's advice was incorrect. *See Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir.1992), *cert. denied,* 507 U.S. 932 (1993). To allow collateral attacks on guilty pleas to be based upon such claims would make every plea subject to attack and render the oral responses given in court meaningless. *Ibid.* In this case, Ramos claims that he relied on his counsel's promise that he would be placed on supershock probation in one year. However, the state trial court specifically asked Ramos, "Do you understand that [rape] is not a probationable offense, that you are not going to receive probation under any circumstances?" Ramos replied, "Yes, Your Honor." Thus, as in *Warner*, the trial judge specifically informed the defendant that his counsel's advice was incorrect.
>
> *
> *
> *
>
> Ramos wants us to rely on his alleged *subjective* impression of what the plea bargain was, rather than the bargain actually outlined *in the record.* The record in the case indicates that Ramos responded negatively (and, he wants us to believe, *untruthfully*) to a judge's inquiry as to whether any promises had been made to him in order to get him to so plead.
>
> If we were to rely on Ramos's alleged subjective impression rather than the record, we would be rendering the plea colloquy process meaningless, for any convict who alleges that he believed the plea bargain was different from that outlined in the record could withdraw his plea, despite his own statements during the plea colloquy (which he now argues were untruthful) indicating the opposite. This we will not do, for the plea colloquy process exists in part to prevent petitioners such as Ramos from making the precise claim that is today before us. "[W]here the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Baker,* 781 F.2d at 90.

*Ramos,* 170 F.3d 560, 566 (6th Cir. 1999) (emphasis in the original). *See also Boyd v. Yukins*, 99 Fed. Appx. 699, 703 (6th Cir. 2004) (even assuming that attorney incorrectly advised petitioner that eight-to-fifteen-year sentencing range represented entirety of her sentence rather than range of minimum sentences, trial court remedied any misconception by informing petitioner of potential maximum and minimum terms of imprisonment); *Mix v. Robinson*, 64 Fed. Appx. 952, 957-58 (6th Cir. 2003) (attorney's alleged promise that defendant would receive eight to twenty years' imprisonment did not invalidate guilty plea where defendant voiced his understanding that crime was punishable up to life imprisonment and trial court then sentenced the defendant to life

imprisonment).

In the instant case, the trial court explained to petitioner on the record that petitioner could be sentenced to three to ten years imprisonment on each of the six counts to which he was pleading guilty for a potential term of 60 years in prison. Petitioner indicated both orally and in writing that he understood. Petitioner also indicated no promises had been made to him in exchange for his guilty plea and that he reviewed with his counsel and understood the written plea agreement. The plea colloquy cited above clearly informed petitioner of the potential sentence he faced. Moreover, at the sentencing hearing, counsel specifically argued for a six to ten year sentence, not the three year sentence petitioner says counsel "promised" if he pled guilty. There is no indication from the transcript that petitioner voiced any objection to counsel's argument for a six to ten year sentence during the sentencing hearing. Thus, even accepting that petitioner's counsel incorrectly advised him that he would receive a concurrent, three-year term of imprisonment in exchange for his guilty plea, the trial judge remedied that misconception on the record by advising petitioner of the potential terms of imprisonment he was facing. Petitioner has failed to show a reasonable probability that, but for counsel's alleged errors, petitioner would not have pled guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59. Therefore, the Court determines that petitioner's plea was not rendered unknowing or involuntary by the allegedly mistaken advice by counsel. Petitioner is not entitled to habeas relief on Ground One of the petition.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) should be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: September 22, 2010

Kl

s/ J. Gregory Wehrman
J. Gregory Wehrman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JAMIN MITCHELL,
Petitioner,

vs.

TIM BRUNSMAN, WARDEN,
Respondent.

Civil Action No. 1:09-cv-632

Spiegel, J.
Wehrman, M.J.

**NOTICE**

Attached hereto is a Report and Recommendation in the above-entitled habeas corpus action brought under 28 U.S.C. § 2254. Any party may object to the Magistrate Judge's Report and Recommendation **within 14 DAYS** of the filing date of this R&R. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s) Any response by an opposing party to the written objections shall be filed **within 14 DAYS** after the opposing party has been served with the objections. A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).